[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14629

_____

A.M. SAMARA,

Plaintiff-Appellant,

*versus*

THOMAS KEITH TAYLOR,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:19-cv-00575-CLM

_____

Before ROSENBAUM and JILL PRYOR, Circuit Judges, and ALTMAN,[*] District Judge.

ALTMAN, District Judge:

Our story begins in 1996, when the Republic of Yemen decided *not* to buy some wheat from our appellant, A.M. Samara, and his then-business-associate, Roy Davis. In this latest installment of a litigation that has dragged—on and off—for more than twenty years, Samara has sued Davis's son-in-law, Thomas Taylor (our appellee), over 107 acres of land that (Samara says) should have been included in a mortgage Davis signed over to him in 2012. That mortgage was the major part of a settlement agreement between Davis and Samara and was handed over as a way of compensating Samara for his share of the repudiated wheat deal's lost profits.

The parties agree that those 107 acres—known as "Parcel A"—were *not* part of the mortgaged property. But they disagree about why. Samara thinks that Parcel A should have been a part of the mortgage and that it was left out because of fraud or mistake. Taylor, for his part, maintains that Parcel A was never a part of the deal and that the mortgage accurately reflects the parties' agreement.

---

[*] The Honorable Roy K. Altman, United States District Judge for the Southern District of Florida, sitting by designation.

Based on this disagreement, Samara sued Taylor in the Northern District of Alabama, asserting a claim for reformation. The district court granted Taylor's motion for judgment on the pleadings, denied Samara's motion for summary judgment, and (later) denied Samara's motion to alter or amend the judgment. In doing so, the court held *both* that Samara's claim was time barred *and* that Samara failed to offer clear and convincing evidence of fraud or mistake. After careful review, we affirm.

## BACKGROUND

### I.    The Business Deal

This case began with a business deal gone wrong.[1] In the 1990s, the Republic of Yemen agreed to buy wheat from a joint venture between Strickland & Davis International, Inc. (owned by Davis, our appellee's father-in-law), and Samara Consultant Group (owned by our appellant). Samara contends that he and Davis agreed to share the profits of that wheat sale 50/50. Unfortunately, Yemen defaulted on the contract.

After Yemen's default, Davis and Yemen arbitrated their contract dispute here in the United States. On June 5, 1998, an arbitrator awarded Davis's company $17,310,000 in damages. Six

---

[1] We take judicial notice of the lengthy litigation history that led to this appeal—including the pleadings, records, and judgments that appear on the district court's docket. *See United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts.").

months later, Davis's company filed an action in federal court to enforce the arbitration award, and the district court entered judgment in favor of Davis's company and against Yemen in the amount of $27,150,315.53 (which included the original arbitration award plus pre- and post-judgment interest).

Shortly after the court entered its judgment, Davis's company and the Republic of Yemen settled their dispute for $16,325,000. Davis forwarded $1,000,000.00 of the settlement proceeds to Samara. According to Samara, Davis made no other payments to him.

## II.    The Dispute Between Davis and Samara

In March 2002, Samara (and his company) sued Davis (and his company) in the Northern District of Alabama to recover half of the settlement proceeds Davis had received from Yemen. The case went to a jury trial in April 2004, where the jury returned a verdict against Davis's company (S & Davis)[2] and in Samara's favor. The court separately granted Davis's individual motion for judgment as a matter of law and terminated him from the case. The district court entered an interlocutory judgment of $1,075,851.37, pending its resolution of the interest amount.

A flurry of motions followed: Samara sought an accounting of all funds flowing from the settlement, additur, pre-judgment

---

[2] S & Davis is the "doing business as" name for Strickland & Davis International, Inc.—the original party to the joint venture.

interest, a constructive trust, and so on. The district court imposed a constructive trust against Davis's two companies (Strickland & Davis and DISC) pending the magistrate judge's report and recommendation on Samara's motions.[3] The magistrate judge ultimately recommended that Samara's motions (for an accounting and for imposition of a constructive trust) be granted, and the court adopted this recommendation over the defendants' objections. In the R&R, the magistrate judge explained why it felt that Davis (individually) and DISC should be subject to the constructive trust when they hadn't been found liable at trial:

> There is no fact dispute necessitating a trial, jury or non-jury, that Davis was the president and sole shareholder in S. & Davis, and that he controlled both S. & Davis and DISC Corporation. There is no dispute that the settlement proceeds were paid to S. & Davis, and there is no apparent dispute that S. & Davis's net, pretax proceeds were paid over to DISC Corporation. Under the Alabama authority cited above, the voluntary donation of the proceeds to DISC Corporation constituted a fraudulent conveyance as to S. &

---

[3] DISC was not a defendant in the case, but the court noted in its order that "[c]ounsel for Defendant stated at a recent hearing before Judge Putnam that the settlement money was being held by Strickland & Davis International Disc, Inc. Therefore, the Court imposes a constructive trust on said money or assets in the amount of the interlocutory judgment." Order, *Samara Consultant Grp. v. S & Davis Int'l Inc.*, No. 02-cv-00707 (N.D. Ala. June 22, 2004), ECF No. 174 at 1.

> Davis's creditors, including plaintiff, regardless of whether there was any intent to defraud or even whether DISC Corporation was on notice of S. & Davis's debt to plaintiff.

And so, Davis was back on the hook for Samara's share of the settlement proceeds—despite having prevailed at trial.

In September 2004, the district court entered final judgment for Samara in the amount of $1,264,125.47, certified the judgment under Rule 54(b), and reserved authority to enter further orders regarding the constructive trusts and other related issues. Soon after, Samara moved for an order enforcing the constructive trust—specifically, for an order requiring Davis and one of his entities to pay the judgment. The district court granted that motion and entered an amended final judgment[4] that enforced the constructive trust as to Davis individually and that directed Davis to pay the full amount of the judgment to the clerk of court within seven days. The order also described how the constructive trust would work:

> Based on the affidavit of Roy Davis and the representations previously made to the Court, the Court hereby enforces the constructive trust. **Roy Davis, individually, is ordered to pay the amount of judgment to the Clerk of the Court within seven (7) days. Until**

---

[4] In the Amended Judgment, the court also adjusted its calculation of the outstanding prejudgment interest and, as a result, altered the total judgment amount to $1,258,747.57.

> **said money is paid to the Clerk of the Court, Roy Davis, Strickland Davis International and Strickland and Davis International DISC Corporation are ordered to refrain from disposing or transferring any money or assets to other persons or entities other than ordinary expenses without the express permission of this Court. When the full amount of judgment is paid into the Clerk's Office, the constructive trust will be dissolved pending further orders of this Court.** In the event that any Defendant in this case appeals the judgment in this case, or any aspect of the judgment including the constructive trust, Roy Davis shall pay to the Clerk of the Court an additional amount equal to 10% of the judgment as surety for interest occurring during the appeal. The payment of the judgment, plus the 10% of judgment, to the Clerk's Office will be a sufficient appeal bond to stay recovery of the judgment.

(emphasis added).

Davis immediately moved to amend the judgment. He claimed that he did "not have liquid assets sufficient to pay the judgment or obtain a supersedeas bond" and asked for permission (and more time) "to pledge, mortgage or liquidate assets for the purpose of securing a supersedeas bond." Over Samara's objection, the district court amended the final judgment again—this time, directing Davis to deposit $250,000 with the court within 10 days and

the judgment balance within 30 days. Davis complied and made the $250,000 deposit on time.

Two weeks later, Davis appealed the final judgment—without posting a surety bond. Instead, he moved for a 45-day extension because he had not yet been able to secure the necessary funds (the full judgment plus 10%) to post the bond. Samara, in turn, filed a motion to hold Davis in contempt for failing to timely pay the judgment balance. A few days later, Davis filed a suggestion of bankruptcy, which derailed the litigation. And so, the parties took a year-long hiatus from their judgment fight to quarrel in bankruptcy court.

But, in the first few days of 2006, the bankruptcy court granted Samara's motion to dismiss Davis's bankruptcy petition—thus disposing of one obstacle to Samara's collection efforts. A few weeks later, on February 13, 2006, the parties reached a tentative agreement regarding the outstanding judgment. They "agreed . . . to allow Roy Davis to post a mortgage to the Clerk of the Court in lieu of cash consisting of mortgages on real estate owned by Roy Davis and Voncile Davis" and told the district court that "Roy Davis is in the process of obtaining appraisals and title opinions on said real estate." Samara and Davis filed a joint motion asking the district court to enter a proposed order—with the mortgage instrument attached. (Spoiler alert: This is the mortgage at issue here).

On March 1, 2006, the district court entered the parties' proposed order and attached the mortgage. The court required the parties to file a joint report within one month, by which time Davis

must have either posted the bond or showed cause why the stayed proceedings should not immediately recommence. Here's (in relevant part) what the order said about the mortgage:

> **Roy Davis and Voncile Davis shall deliver to the Clerk of Court the originally executed mortgage document in the form attached to this Order**, which mortgage shall have been filed of record in the Probate Court of Franklin County, Alabama by Roy Davis before filing.
>
> All proceedings in this matter are hereby STAYED pending resolution of the appeal by the United States Court of Appeals for the Eleventh Circuit. **Upon the filing of appraisals satisfactory to the court showing the property to be of a value of at least one million five hundred thousand dollars ($1,500,000.00) and evidence that title is held by Roy Davis and Voncile Davis individually as joint tenants, in fee, and that the property conveyed is not subject to any other encumbrances, the constructive trust imposed by the court shall be dissolved**, the Motion to Require Return of Attorney Fees and all motions for contempt filed by plaintiff shall be dismissed as moot…
>
> The mortgage is conveyed to the Clerk of the Court in lieu of cash. It is agreed by the parties that by the conveyance of the mortgage as supersedeas, the rights of A.M. Samara regarding the constructive trust shall be the same as if cash had been deposited with the Clerk.

(emphasis added).

We pause our narrative here to note the parties' agreement that the mortgage they attached to the proposed order did *not* contain Parcel A. *See* Appellant's Br. at 10 ("When the mortgage was prepared by [a law firm] for Davis, the following property (107 acres) was omitted from the mortgage[.]"); Appellee's Br. at 9 ("Attached to that Joint Motion was a proposed Order referencing property **held by Roy Davis and Voncile Davis individually as joint tenants** as well as a mortgage executed by Roy Davis and Voncile Davis that . . . included all property **held by Roy Davis and Voncile Davis individually as joint tenants**."). Crucially, Samara knew that Parcel A was not "held by Roy Davis and Voncile Davis individually as joint tenants." He, in fact, described that parcel in filings before the district court as "a large piece of property, owned by Voncile Davis."

Back to our overall story. In March 2006, a lawyer filed an "opinion of title to the lands described in the mortgage from Roy Davis and wife Voncile Davis."[5] A few days later, Davis submitted a status report, asserting that "[t]he original mortgage [and title opinion] required to be filed with the clerk of court ha[ve] been delivered to and accepted by the clerk." On April 6, 2006, Davis filed an appraisal valuing the land at $1,690,000. In describing the

---

[5] For reasons unknown to us, the lawyer filed this opinion in Samara's related action against a *different* Davis-affiliated entity, rather than in the case involving Davis individually.

"[s]cope of the [a]ppraisal," the appraiser noted that Parcel One had "an office and warehouse" and that Parcel Two was "a 232.03 acre farm." It appears, in other words, that the appraisal *included* the disputed Parcel A, even though (as we've said) that parcel was excluded from the mortgage.

Four days after Davis filed the appraisal, the district court *sua sponte* dissolved the constructive trust and denied all pending motions as moot. In its order, the court first repeated the requirements it had outlined for the dissolution of the constructive trust, as set out in the parties' proposed order: (1) the filing of the mortgage, (2) the filing of the title opinion, and (3) the filing of the appraisal. The court then found that Davis had, in fact, satisfied each of those requirements, including "on April 6, 2006, counsel filed notice of an appraisal conducted by David S. McFall, which listed the value of the property described in the mortgage as one million six hundred ninety thousand dollars ($1,690,000.00)."

But our story doesn't end there. Six months after the district court dissolved the constructive trust, we handed down our decision regarding the propriety of that (now-dissolved) trust. In that opinion, we expressed concern about "whether appellants [Davis and DISC Corporation] were afforded a fair opportunity to defend against the imposition of a constructive trust as the recipient of a fraudulent or otherwise wrongful transfer." We were similarly "concerned that the district court never explained its rationale for setting aside the previous judgments against appellants." On those grounds, we vacated and remanded the district court's order

imposing the constructive trust. We did so without addressing the fact that the trust had already been dissolved. Since the now-vacated order was the only mechanism by which Samara could enforce the constructive trust against Davis *individually*, Samara was right back where he started: with no enforceable judgment in hand.

Over the next year, the motions practice continued—with little resolution. In January 2008, Davis filed a suggestion of bankruptcy for his company, S & Davis. Samara, in turn, moved to sever the claims against S & Davis so that his case against Davis (individually) and DISC could proceed. After a few months of this, the district court entered an order (1) staying the case "pending the resolution of the bankruptcy proceedings and any fraudulent transfer litigation arising out of those proceedings" and (2) asking the parties to "submit briefs . . . addressing whether the mortgage currently held in the court should be returned."

In September 2008, Samara's lawyer filed a response "request[ing] the Court to maintain the mortgage interest on real estate with the Clerk of the Court." Samara explained that, in the bankruptcy case, the plan was for "the Trustee [to] join in the pleadings of this Court" and to "take possession of [the mortgage] for the benefit of the creditors." He added that "[a] release of the mortgage at this time would interfere with the Trustee's right to claim the mortgage as an asset of the debtor's estate."

A short while later, Samara filed a sixth amended complaint, adding new parties and new claims—back to square one. Among the defendants Samara listed in this latest complaint were Davis, S

& Davis, DISC, Native American Development LLC (an entity that, according to Samara, Davis used to fraudulently transfer settlement proceeds), four Davis family members (also accused of fraudulent transfers), and Christian & Small LLC (Davis's former counsel).

Eventually, on November 17, 2010, the district court considered cross-motions for summary judgment between Davis (on the one hand) and the Trustee and Samara (on the other). In a long order, the court found (in relevant part) that Davis had fraudulently conveyed funds from S & Davis to DISC and then from DISC to others and granted partial summary judgment for Samara and the Trustee.

After another tortured year of litigation, on November 2, 2011, the district court ordered that the mortgage be assigned to the Trustee for Samara's benefit (he was the only creditor). In that order, the district court explained what had happened with the mortgage:

> On January 22, 2009, in response to a motion by the Trustee, the U.S. Bankruptcy Court entered an order freezing the . . . real estate mortgage that Davis and his wife, Voncile Davis, executed in the amount of $1,134,622.33 in favor of the U.S. District Court. . . .
>
> On June 28, 2011, Trustee filed a motion in the U.S. Bankruptcy Court to compel turnover of the . . . real

estate mortgage held by the U.S. District Court as property of the Bankruptcy Estate.

The court concluded:

> The Clerk is hereby **AUTHORIZED** and **DIRECTED** to immediately assign and transfer to the Trustee the real estate mortgage that Roy Davis and Voncile Davis gave in the amount of $1,134,622.33 in favor of the U.S. District Court, to be held by the Trustee pending further Order of the Bankruptcy Court.

The trustee duly complied and assigned the mortgage to Samara. On December 4, 2012, Samara foreclosed and bought the property (from himself) for $765,915.

Then, on January 10, 2014, Samara filed a motion to reform the mortgage. Samara explained:

> Plaintiff A. M. Samara moves that the Court reform the mortgage, given by Roy Davis and wife Voncile Davis (Ex. A), so as to include the following property which is owned by Voncile Davis and which was excluded from the mortgage which Roy and Voncile Davis gave A. M. Samara to stay judgment and to avoid contempt proceedings. A. M. Samara has foreclosed on the property included in the mortgage. Roy Davis and Voncile Davis still occupy the property. However, a large piece of property, owned by Voncile Davis, included in the Davis's farm was not

included in the mortgage. . . . **The property owned by Voncile Davis was listed on the appraisal. The property owned by Voncile Davis was omitted from the mortgage which was prepared by Counsel for Davis. The farm listed on the appraisal consists of 232.3 acres. The property listed on the mortgage is 110 acres. The property belonging to Voncile Davis was omitted from the mortgage.**

(emphasis added).

Two weeks later, the district court terminated the motion to reform in a one-page order. "The problem for A.M. Samara," the court explained, "is that the case before this court has been closed since November of 2010." The court added: "The Motion (Doc. #555) does not provide the court with sufficient cause to reopen this case, especially in light of the fact that all of the motions that were filed in this case in 2013 were administratively terminated in favor of alternate avenues for relief." And that was the end of our story—for a little while.

## III.    Samara's Case Against Taylor

On April 15, 2019, Samara filed a new case against Davis's son-in-law, Thomas Keith Taylor (our appellee), contending that Parcel A had been fraudulently transferred to Taylor. Samara called his complaint a "COMPLAINT TO REFORM MORTGAGE AND TO TRANSFER TITLE." In that complaint, Samara cited ALA. CODE § 35-4-153, which says:

> When, through fraud, or a mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a deed, mortgage, or other conveyance does not truly express the intention of the parties, **it may be revised by a court** on the application of the party aggrieved so as to express that intention, insofar as this can be done without prejudice to rights acquired by third persons in good faith and for value.

ALA. CODE § 35-4-153 (emphasis added).

On September 3, 2019, Samara moved for summary judgment and Taylor moved for judgment on the pleadings. Not two weeks later, the district court granted Taylor's motion and denied Samara's, reasoning that (1) the statute of limitations for reformation had expired and (2) Samara had not (in any event) sufficiently alleged fraud or mistake to justify reformation.

On September 15, 2020, Samara filed a Rule 59 motion for reconsideration, which the district court summarily denied. Samara timely appealed the district court's orders (1) dismissing the case and (2) denying his Rule 59 motion. And here we are.

## STANDARD OF REVIEW

"We review *de novo* an order granting judgment on the pleadings." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to

judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). "We must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Id.*

By contrast, "[w]e review denials of Rule 59(e) motions for an abuse of discretion." *Stansell v. Revolutionary Armed Forces of Colom.*, 771 F.3d 713, 746 (11th Cir. 2014). Rule 59(e) provides that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e). "Rule 59(e) allows courts to alter judgments only where there is 'newly-discovered evidence or manifest errors of law or fact.'" *EEOC v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1349 (11th Cir. 2016) (quoting *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007)). "A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur*, 500 F.3d at 1343 (cleaned up).

## DISCUSSION

This appeal raises two questions: The first is whether the statute of limitations bars Samara's claim. The second is whether, if the complaint is timely, Samara states a viable claim for relief. We answer both questions in Davis's favor.

I.      Samara's Claim is Time Barred

Samara's claim for reformation is barred by the statute of limitations. Alabama law provides that "[a]ctions for the recovery of lands, tenements or hereditaments, or the possession thereof" must be "commenced within 10 years" from the date on which the cause of action arises. ALA. CODE § 6-2-33(2); see also Pinto Credit Union v. Brown, 535 So. 2d 139, 139 (Ala. 1988) ("The ten-year statute of limitations applicable to actions for the recovery of land applies as well to an action brought by a judgment creditor, to subject property to his creditor's rights." (cleaned up)). In our case, Davis executed and delivered the mortgage to the clerk of court in 2006. But Samara waited thirteen years—until 2019—to file this action. His claim is therefore untimely.

The Alabama Supreme Court has already concluded that Section 6-2-33(2) applies to actions to reform mortgages. See Swan v. Magnusson, 418 So. 2d 844, 846 (Ala. 1982). In Swan, the plaintiff had obtained a $50,000 judgment against the defendants in a personal injury case. Id. at 845. The defendants later conveyed certain land they owned to avoid execution of the judgment. Id. When the plaintiff brought an action alleging fraudulent transfer, the parties presented the court with two competing statutes of limitations: The plaintiff relied on the ten-year statute of limitations for recovery of land, whereas the defendants pointed to the one-year statute of limitations for fraud. Id. at 846.

The court concluded that the ten-year limit applied: "In determining which statute of limitations should apply, an examination of Swan's complaint readily disclose[d] that § 6-2-33 applies." *Id.* The court observed that the complaint specifically cited a "statutory [provision] affording remedies to creditors." *Id.* "The ten-year statute of limitations applicable to actions for the recovery of lands applies as well to an action brought by a judgment creditor, involving a fraudulent conveyance of property by a debtor, to subject property to his creditor's rights." *Id.*

So too here. In his complaint, Samara *specifically* block-quoted from, and cited to, the statutory cause of action for reformation. The Alabama Supreme Court has already said that the ten-year statute of limitation in § 6-2-33 applies to actions brought under § 35-4-153. Therefore, the ten-year period for reformation applies to Samara's claims.

Resisting this result, Samara offers two arguments—both unavailing. *First*, he says that the statute of limitations began to run in 2012 (when the bankruptcy trustee assigned the mortgage to him), not in 2006 (when Davis filed the mortgage with the clerk of court). *Second*, he insists that ours isn't a reformation case at all; instead, he now maintains, he's brought an action to enforce a judicial decree. We address (and reject) each argument in turn.

*First*, as a threshold matter, Samara has cited no authority for the proposition that a cause of action accrues only when the mortgage is assigned—rather than when it's filed with the court. For that reason alone, the argument is waived. *See Hamilton v.*

*Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it.").

Waiver aside, though, the argument is meritless. That's because Samara's position is in nagging tension with what the Alabama Supreme Court has said on similar facts. In *Scofield v. Cheatham*, 485 So. 2d 722 (Ala. 1986), the court was asked to determine whether, under § 6-2-33(2)—the same statute of limitations at issue here—a claim premised on a breach of warranty in a deed accrued (1) when the deed was executed and delivered to the parents of the plaintiff or (2) when the deed was transferred to the plaintiff six years later. *Id.* at 723. The court rejected the plaintiff's argument—which Samara restates here—that the claim accrued "when the breach actually became known to him." *Id.* Instead, the court held, the cause of action accrued "upon execution and delivery of the deed." *Id.* That conclusion is dispositive here: Samara's claim—which is based on the defective mortgage—accrued when the mortgage was executed and delivered to the court for Samara's benefit (just like the claim in *Scofield* accrued when the deed was delivered to the plaintiff's parents for the plaintiff's benefit). The timing of Samara's discovery of the error is just irrelevant.

But here's the thing: Even if Samara's knowledge were necessary to trigger the statute of limitations, we'd still reject his claim because he unquestionably *knew* about the mortgage in 2006. Recall that, on March 15, 2006, Davis filed a status report on the

district court's public docket, which explained that "[t]he original mortgage required to be filed with the clerk of court has been delivered to and accepted by the clerk." A few days later, Samara filed a response to that status report. More than that, on September 24, 2008—still well within our ten-year window—Samara's lawyer filed a motion "request[ing] the Court to maintain the mortgage interest on real estate with the Clerk of the Court," so that "the Trustee [could] join in the pleadings of this Court" and "take possession of [the mortgage] for the benefit of the creditors." Samara, in other words, knew all about the mortgage and its contents—as the papers he filed, which directly referred to that mortgage, make plain.

*Second*, Samara contends that his case against Davis isn't a reformation action at all, but rather an action to enforce a prior decree. He thus argues that the applicable statute of limitations is twenty years, not ten. *See* ALA. CODE § 6-2-32 ("Within 20 years, actions upon a judgment or decree of any court of this state, of the United States, or of any state or territory of the United States must be commenced.").

For a few reasons, we reject Samara's attempt to recharacterize his claim. *One*, as we noted before, Samara (in his complaint) block-quoted from, and relied on, the statutory cause of action for reformation. Here's that passage:

> Under Alabama law, when, through fraud, or a mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a

deed, mortgage, or other conveyance does not truly
express the intention of the parties, it may be revised
by a court on the application of the party aggrieved
so as to express that intention, insofar as this can be
done without prejudice to rights acquired by third
persons in good faith and for value. Ala. Code § 35-4-
153.

It would be puzzling, indeed, for Samara to have quoted this lan-
guage if he, in fact, had sought to enforce a judgment rather than
to reform a mortgage. As in *Swan*, the complaint was clear about
the relief he was seeking—and he's stuck with those allegations
now.

*Two*, even if his complaint *had* sought enforcement, Samara
never tells us which judgment or decree we should be enforcing.
As our factual recitation made clear, the parties have sued each
other several times over the years, and the various judges who
have presided over those trials have entered hundreds of orders.
Since his lawsuit never mentions enforcement, he never actually
told the district court—or us—which of these many orders his com-
plaint hoped to enforce.

*Three*, even if none of this were true, we still think Samara's
(alleged) enforcement action would fail. Why? Because there
doesn't seem to be anything left to enforce—*even if* we were to
start guessing at Samara's intentions. Looking back at the original
case docket, we can think of two possible orders Samara *might*
have wanted to enforce. One said: "Upon the filing of appraisals

satisfactory to the court showing the property to be of a value of at least one million five hundred thousand dollars ($1,500,000.00) . . . the constructive trust imposed by the court shall be dissolved." There's simply nothing to enforce here. Maybe Samara is suggesting that this order should be enforced by *not* dissolving the constructive trust—presumably because, in his view, the conditions precedent to the dissolution of that trust haven't been satisfied. But remember that we vacated that constructive trust fifteen years ago, citing serious due-process concerns. We cannot resuscitate a constructive trust that's been dead for fifteen years. And we refuse to bring back a trust whose dissolution we ordered because of the due-process problems it had presented.

The second order said: "[C]ounsel filed notice of an appraisal . . . , which listed the value of the property described in the mortgage as one million six hundred ninety thousand dollars ($1,690,000.00). Accordingly, all the conditions set forth in the March 1, 2006 order have been satisfied. The constructive trust imposed on November 17, 2004, and amended on December 6, 2004, is DISSOLVED." Again, there's nothing here for us to enforce. The district court might've been wrong in finding that the conditions precedent had been satisfied. But that's an issue with the order—not its enforcement.

Samara's claim, in short, is for reformation; the statute of limitations is ten years; and the clock started ticking way back in 2006. Since Samara didn't file his complaint until 2019, his claim is time barred.

## II.    Samara's Claim for Reformation Fails on the Merits

Because Samara's reformation claim is time barred, we needn't reach its merits. We note here only that, even if we did, the claim would fail. Alabama law provides, in pertinent part, as follows:

> When, through fraud, or a mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a deed, mortgage or other conveyance does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention, insofar as this can be done without prejudice to rights acquired by third persons in good faith and for value.

ALA. CODE § 35-4-153. The Alabama Supreme Court has "explained that reformation of a deed or mortgage pursuant to § 35-4-153 is appropriate only when there is 'clear, convincing, and satisfactory' evidence indicating that the conveyance does not truly express the parties' intent." *U.S. Bank Nat'l Ass'n v. Shepherd*, 202 So. 3d 302, 309 (Ala. 2015) (quoting *Mullinax v. Mullinax*, 495 So. 2d 646, 648 (Ala. 1986)).

The district court resolved this question on Taylor's motion for judgment on the pleadings. A judgment on the pleadings is appropriate when there are no issues of material fact and the movant is entitled to judgment as a matter of law. *See Perez*, 774 F.3d at

1335. "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). When ruling on a motion to dismiss under Rule 12(b)(6), we accept the complaint's factual allegations as true and construe them in the light most favorable to the non-movant. *See, e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). To survive a motion for judgment on the pleadings, then, the factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, bare legal conclusions "are not entitled to the assumption of truth" and are insufficient, standing alone, to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

Our question, then, is whether Samara has alleged facts that, if taken as true, state a plausible claim of fraud or mistake under Alabama Code § 35-4-153. The district court found that he hadn't, and we agree.

In particular, Samara has failed to plausibly allege that the mortgage *doesn't* express the parties' intentions. He, in fact, did just the opposite: In his Complaint, Samara quoted (and then described) two court orders that referred to the property as

"belonging to Roy and Voncile Davis." Specifically, the Complaint quoted the district court's February 15, 2006 order—which, recall, had required the Davises to file the mortgage and appraisal—this way: "Roy Davis and Voncile Davis shall deliver to the Clerk of the Court the originally executed mortgage document . . . and evidence that title is held by Roy Davis and Voncile Davis individually as joint tenants." And it cited identical language from the district court's April 10, 2006 order, which had acknowledged the filing of the mortgage and then dissolved the trust.

Because the 107 acres of Parcel A were owned individually by Voncile Davis, Samara's own allegations give us good reason to believe that the land was *purposefully* excluded from the mortgage. Land owned solely by Voncile Davis, after all, is *not* owned by Roy and Voncile Davis as joint tenants. In other words, Samara has failed to offer "clear, convincing, and satisfactory [allegations] indicating that the conveyance does not truly express the parties' intent." *U.S. Bank*, 202 So. 3d at 309 (internal quotation marks omitted).

Against all this, Samara advances two arguments—both unpersuasive.

*First*, Samara suggests that "fraud and mistake can be implied from the circumstances." Opening Brief at 16. But, for all the reasons we've given, we disagree that fraud and mistake can be implied *on this record* in a "clear, convincing, and satisfactory" way, which is what Alabama law requires. *Second*, and alternatively, Samara reiterates that "he seeks to enforce a court order which does

21-10745                Opinion of the Court                27

not require any showing of fraud or mistake." *Id.* We disagree. As we've explained, Samara *did not* set out to enforce a court order; he hasn't pointed us to any such order; and there's no such order for us to enforce in any case.

Because we affirm the district court's ruling on Taylor's motion for judgment on the pleadings under the more-exacting *de novo* standard of review, our conclusion applies with even greater force to the court's denial of Samara's Rule 59, which we review only for an abuse of discretion. Suffice it to say here that the district court did not commit "manifest errors of law or fact" in denying Samara's motion for reconsideration. *See St. Joseph's Hosp.*, 842 F.3d at 1349. And Samara offered no "newly-discovered evidence" to justify reconsideration. *Id.* Instead, his motion for reconsideration was an impermissible attempt "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur*, 500 F.3d at 1343 (cleaned up). So, we affirm the court's denial of Samara's Rule 59 motion as well.

★★★

There's an evident incongruity between the appraisal, which includes Parcel A, and the mortgage, which does not. But we cannot, years after the statute of limitations has expired, belatedly tidy up the parties' work for them. And so, after careful review, we **AFFIRM**.