[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11725

Non-Argument Calendar

_____

US IRON FLA, LLC,

Plaintiff-Appellant,

*versus*

GMA GARNET (USA) CORP,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:21-cv-00943-TKW-ZCB

_____

Before WILSON, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

GMA Garnett (USA) Corporation negotiated to sell a mineral called ilmenite to US Iron FLA, LLC, a relative newcomer to the ilmenite resale scene, and US Iron in turn contracted to sell that ilmenite to a third-party purchaser. GMA then allegedly repudiated its contract with US Iron—but only after US Iron's third-party purchaser also backed out. US Iron sued GMA for breach of contract, but the problem for US Iron was that it didn't offer any evidence GMA's alleged breach caused it to suffer lost profits. For that reason, we affirm the district court's summary judgment for GMA and its order denying US Iron's motion for reconsideration.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

GMA is in the business of processing and selling garnet. Its production process generates a byproduct called ilmenite. US Iron is in the business of procuring minerals, like ilmenite, for resale.

In 2019, US Iron's principal, Mark Miller, received a cold call inquiry from Brianna Hanson, a GMA consultant, about US Iron's interest in purchasing ilmenite from GMA. Correspondence between US Iron and GMA continued through early 2021 as the parties negotiated the terms of the sale, including inspection, quality, quantity, price, payment, and shipping.

In the meantime, a third-party purchaser in China contracted to buy the ilmenite from US Iron for $203 per ton. But on

February 8, 2021, the Chinese purchaser backed out, explaining there was "no need to import" ilmenite because "there [wa]s no price or quality advantage at all to purchase" from the United States instead of from China. US Iron was left without a buyer for the GMA-sourced ilmenite. Miller pursued other options and "[was] in discussions with" another potential third-party purchaser, but had not yet reached a contractual agreement by February 10. That day, Hanson told Miller that GMA would not supply US Iron its ilmenite if it planned to resell the ilmenite in China. From there the business relationship unraveled and no sale occurred.

US Iron filed a lawsuit against GMA in August 2021, claiming breach of contract (Counts One and Two) and unjust enrichment (Count Three). In its initial damages calculation, US Iron claimed total damages of $2,719,998.66 for Counts One and Two based on its contract to sell the ilmenite to the third-party Chinese purchaser for $203 per ton.

*Summary Judgment Motions*

Following discovery, US Iron moved for partial summary judgment on GMA's liability for breach of contract, and GMA moved for summary judgment on all of US Iron's claims. Relevant here, GMA argued US Iron couldn't prove lost profits because, after the Chinese buyer reneged, US Iron "had no third[-]party purchaser at $203 per ton." US Iron argued in response that "Miller testified that US Iron has suffered los[t] profits in the amount of $2,719,998.66 as a result of GMA's breach" and that it had

adequately and reasonably demonstrated damages at the summary judgment stage.

The district court granted summary judgment for GMA as to the issue of lost profits on Counts One and Two. It reasoned that "the main problem for [US Iron] is causation" because US Iron's third-party purchaser "undisputed[ly]" revoked its contract with US Iron before GMA's alleged breach. "Thus, even if [GMA] had not breached the contract, [US Iron] was not going to make the profit that it expected from the sale to the Chinese buyer because that sale had already fallen through." The district court explained Miller's testimony that US Iron could have made the same sale to a different third-party purchaser was "speculative, at best, and [wa]s legally insufficient to support a claim for lost profits—particularly since it is undisputed that [US Iron] was new to the ilmenite market and had no track record of profitability in that market."

*Motion for Reconsideration*

US Iron moved for reconsideration of the district court's summary judgment order, arguing it "misapplied or made an error in applying the lost profit standard for a new business and [Uniform Commercial Code] damage options available to US Iron." It identified the "yardstick" test as an established and appropriate method to determine prospective profits for new businesses, and it argued its lost profits could be proven by that method. Specifically, US Iron argued the relevant caselaw "does not preclude the recovery of lost profit damages, but instead supports an award, even if there

was not a resale contract in place." US Iron also argued that benefit-of-the-bargain damages were available and should be determined by a jury, "because [US Iron had claimed] it was not able to utilize ilmenite in its operations."

The district court denied US Iron's motion for reconsideration. It reasoned that US Iron presented insufficient evidence to establish the reasonable certainty of its lost profits. First, it explained US Iron's argument about the "yardstick" test was procedurally barred because US Iron didn't make that argument in its response to GMA's summary judgment motion. Second, on the merits, it found that US Iron had not presented any "evidence from which a jury could find that [US Iron] ha[d] satisfied th[e yardstick] test."

As to US Iron's argument about benefit-of-the-bargain damages, the district court construed it as a motion for clarification because "that issue was not expressly raised in either party's motion[s] for summary judgment." The district court found that US Iron "plausibly alleged that [it] suffered" benefit-of-the-bargain damages in its complaint, but because it did not include those damages in its Federal Rule of Civil Procedure 26(a)(1) disclosures and such omission was not justified or harmless, US Iron "[wa]s barred from recovering [those] damages." US Iron appeals the summary judgment for GMA and the denial of its reconsideration motion.

## STANDARDS OF REVIEW

"We review the district court's grant of summary judgment *de novo* and view all evidence and factual inferences reasonably

drawn from [it] in the light most favorable to the nonmoving party." *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785 (11th Cir. 2005). Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (citing Fed. R. Civ. P. 56(c)). "Conclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Glasscox v. City of Argo*, 903 F.3d 1207, 1213 (11th Cir. 2018); *accord TocMail, Inc. v. Microsoft Corp.*, 67 F.4th 1255, 1263 (11th Cir. 2023).

"We review a district court's denial of a motion for reconsideration for abuse of discretion." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1254 (11th Cir. 2007) (citation omitted). "[W]e will leave undisturbed a district court's ruling unless we find that [it] has made a clear error of judgment[ ] or has applied the wrong legal standard." *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1325 (11th Cir. 2005).

## DISCUSSION

US Iron appeals the district court's order granting summary judgment to GMA on the issue of lost profits, and the district court's order denying US Iron's motion for reconsideration. US Iron argues (1) the district court misapplied the standard for a new business to show lost profits at the summary judgment stage, and (2) US Iron sufficiently pleaded market damages under Florida statute section 672.713 in its complaint and included them in its rule 26(a) disclosures. We first address the district court's summary

judgment ruling, and then turn to its denial of US Iron's motion for reconsideration.

### A. Order Granting Summary Judgment as to Lost Profits

"[T]here is a general rule in Florida to avoid lost profit damages because they can be too speculative and conjectural, [but] they can be recovered if (1) the breaching party caused the loss; and (2) the amount of such damages can be adequately determined by some standard." *HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 878–79 (11th Cir. 2005) (internal citations omitted). "In lost profit cases, Florida's courts have clearly held that *once causation is proven with reasonable certainty*, uncertainty as to the precise amount of the lost profits will not defeat recovery so long as there is a reasonable yardstick by which to estimate the damages." *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1217 (11th Cir. 2006) (emphasis added). "The uncertainty and speculative nature of lost profits that generally defeats their recovery in contract cases refers to the cause of that damage and not to the amount of the damage." *HGI Assocs.*, 427 F.3d at 879 (citing *Twyman v. Roell*, 166 So. 215, 218 (Fla. 1936)).

Two cases are illustrative. First, in *Forest's Mens Shop v. Schmidt*, 536 So. 2d 334, 335 (Fla. Dist. Ct. App. 1988), the landlord of a shopping center repudiated a shop tenant's lease for additional space, and the tenant claimed lost profits due to its inability to expand its shop. The Florida appeals court denied the tenant's claim, finding its "conjecture that the lease of space would have increased profits and that the landlord's repudiation *caused the tenant to lose*

*prospective profits*" was speculative because "the store had not posted a profit in two years and actually lost money as sales increased." *HGI Assocs.*, 427 F.3d at 879–80 (emphasis added) (citing *Schmidt*, 536 So. 2d at 335–36). By contrast, in *Nebula Glass*, we held there was sufficient evidence to establish "with reasonable certainty" that a defective product caused lost profits because the evidence included the plaintiff company owner's testimony, examples of other competitor companies in the market, testimony from customers who stopped purchasing from the plaintiff due to the defective product, and revenue data from before and after the defective product was supplied. 454 F.3d at 1215.

Other than Miller's testimony already discussed, US Iron did not provide any of the sort of evidence provided in *Nebula Glass*. As in *Schmidt*, there is insufficient evidence in the record here to show that GMA's alleged breach of contract caused US Iron to lose profits. In response to GMA's summary judgment motion, US Iron pointed only to its contract with the third-party Chinese purchaser as evidence of its lost profits. But, as the district court explained, "it is . . . undisputed that the Chinese buyer backed out of [its] deal [with US Iron] *before* [GMA] anticipatorily repudiated the contract with [US Iron]," and "[t]here is no evidence that [US Iron] had an alternate third-party buyer for the ilmenite . . . [or] that it could have sold the ilmenite to a different buyer for the same (or similar) price as [US Iron] was going to sell the ilmenite to the Chinese buyer." Instead, US Iron's "entire [argument] depended on proving how [it] would behave in the future based on [its] actions in the past," *Nebula Glass*, 454 F.3d at 1216, and "damages may not be

awarded for lost profits when those profits are dependent on a party taking an action that it is unclear [it] would have taken," *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1177 (11th Cir. 2002).

Given that US Iron didn't present evidence it could sell GMA's ilmenite to a third party, it cannot claim lost profits from GMA's failure to supply it with that ilmenite. US Iron makes two counterarguments, but neither is convincing.

First, US Iron contends it provided sufficient evidence of lost profits through Miller's testimony that US Iron "[wa]s in discussions with" another potential third-party purchaser. The problem, though, is that Miller's testimony was unsupported by any evidence of an alternate contract—or even negotiations with the new purchaser. Unlike in *HGI Associates*, where "there [was] sufficient evidence to show that [the defendant's] repudiation . . . directly caused [the plaintiff's] loss of future profits" because "[t]here [wa]s enough of a market . . . to determine the average resale amount and price for a company in a position similar to [the plaintiff]," 427 F.3d at 880, US Iron did not submit any evidence of the sort. Miller's testimony, which the district court explained "[wa]s speculative, at best," "does not suffice" at the summary judgment stage. *TocMail*, 67 F.4th at 1263 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)).

Second, US Iron contends it can prove lost profits through alternative methods available to new businesses, and it argues the district court erroneously rejected its lost profits claim "simply because US Iron was new in the ilmenite market and did not have a

track record of profitability in the market." But US Iron misunderstands the basis for the district court's summary judgment ruling: "[T]he main problem for [US Iron wa]s causation." In support of its finding of a lack of causation, the district court noted the speculative nature of Miller's testimony that US Iron could have made the same profit by selling to a different third-party buyer. The district court explained that US Iron "was new to the ilmenite market and had no track record of profitability in that market" to show that Miller's claims, as they related to causation, were unsubstantiated and speculative. US Iron's argument on appeal focuses on alternative methods to prove lost profits, but it doesn't address its lack of causation evidence.

Even viewing all evidence and factual inferences in the light most favorable to US Iron, *Castleberry*, 408 F.3d at 785, the record does not contain evidence from which to conclude that GMA's alleged repudiation caused US Iron to lose profits. US Iron has only offered "[c]onclusory allegations and speculation," which are "insufficient to create a genuine issue of material fact." *Glasscox*, 903 F.3d at 1213. Thus, the district court did not err in granting GMA summary judgment on the issue of lost profits.

### B. Order Denying US Iron's Motion for Reconsideration

"We have long held that district courts act well within their discretion when they refuse to consider arguments that a party made for the first time in a motion for reconsideration." *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1235 (11th Cir. 2020). Motions for reconsideration are an improper vehicle for attempting "to

relitigate old matters" or to "raise argument or present evidence that could have been raised prior to the entry of judgment." *Samara v. Taylor*, 38 F.4th 141, 153 (11th Cir. 2022) (quoting *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007)).

For the first time in its motion for reconsideration, US Iron argued that it could prove lost profits using the "yardstick" test, which "consists of a study of the profits of business operations that are closely comparable to [US Iron's]." US Iron also argued for the first time that it had pleaded and disclosed benefit-of-the-bargain damages because it stated in its complaint that, due to GMA's breach, it "ha[d] not been able to utilize the ilmenite in its operations."

First, as to US Iron's "yardstick" test argument, US Iron didn't present that argument until its motion for reconsideration. The district court did not abuse its discretion by refusing to consider an argument presented for the first time in a motion for reconsideration, *Corley*, 965 F.3d at 1235, which US Iron did not preserve, *United States v. F.E.B. Corp.*, 52 F.4th 916, 933 (11th Cir. 2022), because the "yardstick" test argument "could have been raised prior to the entry of judgment," *Samara*, 38 F.4th at 153; *see Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) ("This prohibition [against new arguments in a motion for reconsideration] includes new arguments that were previously available, but not pressed." (quotation omitted)).

Second, the same reasoning applies to US Iron's argument for benefit-of-the-bargain damages, which it raised for the first time

in its motion for reconsideration.  US Iron correctly contends, and the district court acknowledged, that US Iron identified these damages in its complaint.  Nevertheless, under rule 26(a), a plaintiff must provide the defendant with "a computation of each category of damages claimed" and the evidence on which each computation is based.  Fed. R. Civ. P. 26(a)(1)(A)(iii).  Failure to provide such information in a rule 26(a) disclosure precludes the plaintiff from "us[ing] that information . . . on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  *Id.* R. 37(c)(1).  The district court may exclude a damages category that was not properly disclosed.  *See, e.g.*, *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221–22 (11th Cir. 2010).

US Iron did not mention its benefit-of-the-bargain damages theory in its rule 26(a) disclosure or even in its memorandum opposing GMA's summary judgment motion.  The only place US Iron did so, other than in its complaint, was in its own partial summary judgment motion—but even there US Iron's argument was, in substance, an argument for lost profits:  "US Iron lost the benefit of its bargain because it could no longer resell the ilmenite in China."  US Iron offers no justification for its failure to disclose benefit-of-the-bargain damages, and such nondisclosure was not harmless because, as a result, GMA did not have notice or an opportunity to investigate the claim in discovery or to respond.  We will not disturb the district court's denial of the motion for reconsideration because it was not "a clear error of judgment" or an "appli[cation of] the wrong legal standard."  *Guideone Elite*, 420 F.3d at 1325.  Thus, the district court did not abuse its discretion in denying US Iron's

23-11725                  Opinion of the Court                  13

motion for reconsideration.  *Corwin*, 475 F.3d at 1254; *Corley*, 965 F.3d at 1235.

## CONCLUSION

Because US Iron did not show a genuine issue of any material fact related to lost profits, GMA was entitled to summary judgment on that issue and the district court did not err in granting it. The district court also did not abuse its discretion in denying US Iron's motion for reconsideration, because US Iron improperly raised new arguments for the first time in that motion.

**AFFIRMED**.