NOT FOR PUBLICATION

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-13600

Non-Argument Calendar

_____

ANDY DESTY,

*Plaintiff-Appellant,*

*versus*

GEORGIA DEPARTMENT OF HUMAN SERVICES/CHILD
SUPPORT SERVICES,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-03073-SDG

_____

Before JORDAN, JILL PRYOR, and KIDD, Circuit Judges.

PER CURIAM:

After Georgia's Department of Human Services ("DHS")
warned appellant Andy Desty that his driver's license could be

suspended because he was delinquent in paying child support, he sued DHS, alleging that it had violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, and his constitutional rights. The district court dismissed the complaint, concluding that DHS enjoyed immunity under the Eleventh Amendment. After careful consideration, we affirm.

## I.

Georgia law provides that individuals who are delinquent in paying child support may have their driver's licenses suspended. *See* O.C.G.A. § 19-11-9.3(g). It assigns DHS the responsibility for tracking whether those who are required to pay child support are complying with their obligations. *Id.* § 19-11-9.3(a)(1), (b). DHS mails notices to individuals who are delinquent in paying child support, warning that their driver's licenses may be suspended. *Id.* § 19-11-9.3(f). They then have 20 days to come into compliance with their child support orders or reach an agreement with DHS to pay the delinquency. *Id.* § 19-11-9.3(f)(1). If an individual fails to comply with the child support order or reach an agreement within 20 days, DHS then directs Georgia's Department of Driver Services ("DDS") to suspend the person's license. *Id.* §§ 19-11-9.3(g); 40-5-54.1(b). The driver's license remains suspended until the individual "provide[s] proof of compliance with an order for child support." *Id.* § 40-5-54.1(c).

During the 20-day period after receiving a DHS notice, an individual may request an administrative hearing. *See id.* § 19-11-9.3(h). At the hearing, he may raise the following issues: "[w]hether

there is an order for child support," whether he is "covered by that order," whether he is in "compliance with the order," whether he may pay past due child support in periodic payments, and whether he "has been able and willing to comply" with the child support order. *Id*. § 19-11-9.3(h)(1). After the hearing, an administrative law judge decides whether to suspend the individual's driver's license. *Id*. § 19-11-9.3(h)(2). If the administrative law judge suspends the license, the person may seek judicial review of the administrative decision in state court. *Id*. § 19-11-9.3(i). DHS must "stay all action pending the hearing and any appeals." *Id*. § 19-11-9.3(f)(3).

In 2023, Desty received a notice from DHS that he owed child support and his license could be suspended. He also received a notice from DDS that his license was being suspended.

Desty, proceeding *pro* se, sued DHS in federal court. Liberally construed, his complaint alleged that DHS attempted to collect a debt, he disputed the validity of the debt, and DHS failed to respond to his request. He asserted that DHS was liable under the FDCPA. He also brought a claim under 42 U.S.C. § 1983, alleging that DHS violated his constitutional rights. He requested an injunction and $2,000,000 in damages.

After being served with the complaint, DHS failed to file a timely answer. Desty filed a motion for a default judgment. The district court denied the motion because Desty had not first obtained an entry of default.

DHS filed an answer and moved for judgment on the pleadings. It asserted that it was a state agency entitled to immunity

under the Eleventh Amendment. Desty opposed DHS's motion. The district court granted the motion. It concluded that DHS enjoyed Eleventh Amendment immunity because it was an arm of the state and had not waived its sovereign immunity.

This is Desty's appeal.

## II.

We review *de novo* a district court's order granting judgment on the pleadings. *Samara v. Taylor*, 38 F.4th 141, 149 (11th Cir. 2022). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Id.* (citation modified). We review *de novo* whether an entity is entitled to sovereign immunity. *See Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996).

We liberally construe a *pro se* litigant's pleadings, holding them "to less stringent standards than formal pleadings drafted by lawyers." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). We also liberally construe briefs filed by *pro se* litigants. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

## III.

The Eleventh Amendment generally bars federal courts from entertaining suits against states. U.S. Const. amend. XI. "Although the text of the Eleventh Amendment does not appear to bar federal suits against a state by its own citizens, the Supreme Court long ago held that the Amendment bars these suits." *Williams v. Dist. Bd. of Trs. of Edison Cmty. Coll.*, 421 F.3d 1190, 1192 (11th Cir.

2005) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). As we have explained, the Eleventh Amendment "largely shields states from suit in federal courts without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals." *Monroe v. Fort Valley State Univ.*, 93 F.4th 1269, 1276 (11th Cir. 2024) (citation modified). But immunity under the Eleventh Amendment is not absolute. Congress may abrogate this immunity and authorize states to be sued in federal court "in the exercise of its power to enforce the Fourteenth Amendment." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). In addition, "a State may waive its sovereign immunity by consenting to suit." *Id.*

Sovereign immunity under the Eleventh Amendment extends not only to states but also to "agencies and entities that function as an arm of the state." *Ross v. Jefferson Cnty. Dep't of Health*, 701 F.3d 655, 659 (11th Cir. 2012) (citation modified). "Whether an agency qualifies as an arm of the state is a federal question with a federal standard, but whether that standard is met will be determined by carefully reviewing how the agency is defined under state law." *Versiglio v. Bd. of Dental Exam'rs of Ala.*, 686 F.3d 1290, 1291 (11th Cir. 2012). When determining whether an entity is an arm of the state, we consider four factors: (1) how state law defines the entity, (2) the degree of control the state maintains over the entity, (3) where the entity derives its funds, and (4) who is responsible for judgments against the entity. *Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003) (en banc). We analyze these factors "in light of the

particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id.* at 1308.

On appeal, Desty challenges the district court's determination that DHS enjoyed sovereign immunity under the Eleventh Amendment.[1] To determine whether DHS qualifies as an arm of the state, we consider the four factors identified above.

For the first factor, we look at how Georgia law describes DHS. We consider how state law describes the agency "because states have extremely wide latitude in determining their forms of government and how state functions are performed." *Id.* at 1309 n.10. We conclude that this factor weighs in favor of immunity. The Georgia statute that created DHS declares that it is "an institution of the state." O.C.G.A. §§ 49-2-1; 49-2-5. And Georgia courts have recognized that, as *an institution of the state*, DHS is entitled to sovereign immunity under Georgia law. *Garrett v. Dep't of Hum. Servs.*, 845 S.E.2d 742, 745–46 (Ga. Ct. App. 2020) (recognizing that DHS generally enjoins state sovereign immunity unless waived by the General Assembly); *see* Ga. Const. art. I, § 2 ¶ IX(e) (stating that

---

[1] We liberally construe Desty's appellate brief as raising a second issue: whether the district court erred in denying his motion for a default judgment. We review a district court's order denying a motion for default judgment for abuse of discretion. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015). Under the Federal Rules of Civil Procedure, obtaining a default judgment involves two steps: the clerk must first enter a default and then the party seeking relief must apply to the court for a default judgment. Fed. R. Civ. P. 55(a), (b)(2). Because the clerk had not yet entered a default, Desty's motion for default judgment was premature, and the district court did not abuse its discretion in denying it.

24-13600                Opinion of the Court                        7

"sovereign immunity [under state law] extends to the state and all of its departments and agencies"). Here, we see no indication that DHS acts as anything other than an arm of the state when it performs the functions at issue in this case—warning individuals who owe child support that they are at risk of having their state-issued driver's licenses suspended and then requesting that DDS suspend licenses.

For the second factor, we ask what degree of control Georgia maintains over DHS when it sends notices warning individuals about license suspensions and requests license suspensions from DDS. *See Manders*, 338 F.3d at 1320. This factor weighs in favor of immunity because the state maintains control over DHS when it performs these functions. DHS is run by a commissioner who is appointed and may be removed by the state Board of Human Services. O.C.G.A. § 49-2-1(b). The members of the Board of Human Services, in turn, are directly appointed by Georgia's governor and confirmed by its state senate. *Id.* § 49-2-2(a). In addition, when an individual disagrees with DHS's determination to suspend her license for delinquent child support, she may seek administrative review and later judicial review in Georgia state court. *See id.* § 19-11-9.3(i). A review of Georgia law thus shows that the state maintains oversight of DHS, including when it performs the functions at issue in this case.

For the third factor, we look at the source of DHS's funds. Because it receives funding by appropriations from the General Assembly, *id.* § 49-2-10, this factor, too, supports sovereign immunity.

*See Monroe*, 93 F.4th at 1282 (holding that this factor weighed in favor of sovereign immunity when the entity was funded, at least in part, by appropriations from the Georgia legislature).

For the fourth and final factor, we consider who is responsible for any judgment against DHS. As the United States Supreme Court has explained, "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit." *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) (citation modified). We have recognized that when an entity is funded directly from state appropriations, a judgment against it likewise would come out of state appropriations. *See Monroe*, 93 F.4th at 1279. Because DHS is funded directly from state appropriations, we conclude that state funds would be used to pay any judgment against it.

After considering the four relevant factors, we conclude that when DHS notifies individuals that they are delinquent on their child support obligations and their license may be suspended and then requests the suspension of their licenses, it functions as an arm of the state. Desty resists this conclusion. He argues that DHS does not qualify as an arm of the state because the federal government has assigned DHS a different employer identification number than the State of Georgia. But the fact that the federal government may view DHS and the State of Georgia as separate employers for federal tax purposes does not change our analysis as to whether DHS functions as an arm of the state for Eleventh Amendment purposes.

24-13600                Opinion of the Court                9

Even when an entity qualifies as an arm of the state, however, it is not entitled to sovereign immunity if Congress has abrogated its immunity. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000). "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Id.* (citation modified).

We conclude there is no abrogation here. Desty brought claims under two federal statutes—the FDCPA and § 1983. After reviewing both, we conclude that neither statute abrogated states' sovereign immunity. The FDPCA provides a private right of action against a "debt collector" who fails to comply with the statute. 15 U.S.C. § 1692k(a). But Congress expressly carved out from FDCPA's definition of debt collector, "any officer or employee of . . . any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties." *Id.* § 1692a(6). After reviewing the text of the FDCPA, *id.* §§ 1692–1692p, we see no language making it "unmistakably clear" that Congress intended to abrogate the states' sovereign immunity and make them subject to suit in federal court for violations of the statute. *Kimel*, 528 U.S. at 73 (citation modified). And we have previously held that Congress did not abrogate states' Eleventh Amendment immunity for claims under § 1983. *See Nichols v. Ala. State Bar*, 815 F.3d 726, 731 (11th Cir. 2016).

It is true that an entity that qualifies as an arm of the state may consent to being sued in federal court and waive its sovereign

immunity. *See Williams v. Bd. of Trs. of Univ. of Ala.*, 128 F.4th 1208, 1215 (11th Cir. 2025). We have recognized that consent may be manifested in various ways, including "through a contract or state statute waiving immunity." *Id.* But we see no indication that DHS agreed to waive its sovereign immunity here.[2]

After careful consideration, we conclude that DHS enjoys sovereign immunity pursuant to the Eleventh Amendment. Accordingly, we affirm the district court's dismissal of the complaint for lack of subject matter jurisdiction.

**AFFIRMED.**

---

[2] Under the *Ex Parte Young* doctrine, federal courts may entertain suits "against state officers seeking prospective equitable relief to end continuing violations of federal law." *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) (citation modified). Although Desty sought prospective equitable relief, the doctrine of *Ex Parte Young* does not apply because he sued DHS, not a state officer.